**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CARROLL M. COUNTS; CHARLES J.
DICKEY, JR.; DONALD M. FISHER;
JOHN K. KNOX; CHARLES J.
MCKINNEY; ROBERT K. MARSH;
BARRY E. MATHER; JERRY R.
NOLTING; SUSAN B. REESE; MARTY S.
RUFF; KARL D. SEASE; JOHN E.
THOMPSON; LYNDELL WARREN
HOLSONBACK; DENNIS LAWAYNE
HUTTON; DEAN G. BROUILLETTE;
DOUGLAS OWEN WATSON,
individually, and as representatives
for the benefit and on behalf of
others similarly situated,                  No. 02-1131
              *Plaintiffs-Appellants,*

                   and

JOHN DOE, I; JOHN DOE, II; JOHN
DOE, III; JOHN DOE, IV; JOHN DOE,
V; ROBERT D. DERRICK,
                        *Plaintiffs,*

                   v.

SOUTH CAROLINA ELECTRIC & GAS
COMPANY,
                  *Defendant-Appellee.*

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., Chief District Judge.
(CA-99-3659-3-17)

Argued: December 4, 2002

Decided: January 31, 2003

Before WILKINSON, Chief Judge, and WILLIAMS and
MOTZ, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Williams and Judge Motz joined.

---

**COUNSEL**

**ARGUED:** Arthur K. Aiken, HAMMER, HAMMER, CARRIGG & POTTERFIELD, Columbia, South Carolina, for Appellants. Sue Erwin Harper, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** William C. Wood, Jr., Debbie N. Whittle, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee.

---

**OPINION**

WILKINSON, Chief Judge:

Plaintiffs in this case sued their employer, South Carolina Electric and Gas Company, for overtime wages for work done during two five-week periods in 1997 and 1999. Plaintiffs' status as exempt administrative employees under the Fair Labor Standards Act, however, does not change merely because they perform some nonexempt labor. Therefore, their claim for overtime pay must fail.

I.

Plaintiffs are seventeen salaried employees of South Carolina Electric and Gas ("SCE&G") who work at the V.C. Summer Nuclear Station in Jenkinsville, South Carolina. All earn between $52,000 and $65,000 a year. They brought a class action suit pursuant to the Fair Labor Standards Act ("FLSA") on behalf of themselves and others similarly situated. Plaintiffs contended that they were entitled to

recover unpaid wages for overtime work performed during two plant outages, as well as liquidated damages and attorney's fees.

Approximately every eighteen months, the V.C. Summer plant must be shut down for the performance of routine maintenance. During these outages, workers refuel the plant and complete other tasks which cannot be accomplished while the reactor is on-line. Outages generally last thirty-five to forty days, during which time SCE&G utilizes both its own staff and contract employees to complete the work as efficiently as possible. Employees who are not exempt from the overtime provisions of FLSA are paid time and a half for any hours over forty a week worked during the outages.

Many employees are reassigned during these down periods and asked to perform outage-specific tasks. Because this is a busy time for the plant, employees are also asked to work extra hours. Assignments are based on the company's need and the employees' expertise. During an outage in October and November of 1997, SCE&G asked 282 of its 290 exempt employees to work more than forty hours during at least one work week. Twelve of these 282 employees were reassigned to jobs normally considered nonexempt. During an outage in April and May of 1999, 282 of SCE&G's 285 exempt employees worked overtime. Sixteen of those employees were asked to complete tasks normally performed by nonexempt workers.

The seventeen plaintiffs in this case were administrative employees asked to perform nonexempt duties during the outages in question. None of these employees were paid overtime wages for this work. Each received his normal management salary during this time, and each returned to his regular job after the outage tasks were complete.

Plaintiffs filed this suit in state court alleging that SCE&G violated Section 7(a) of FLSA by failing to compensate them for overtime worked during these two fueling outages. Specifically, plaintiffs claimed that they were entitled to be paid time and a half for overtime hours worked at non-exempt tasks during these five-week periods. SCE&G removed the case to the United States District Court for the District of South Carolina and, following the completion of discovery, moved for summary judgment. The district court granted SCE&G's motion on December 27, 2001. Plaintiffs appeal.

II.

Section 7(a) of FLSA mandates that employees be paid at least time and a half for any time they work over forty hours a week. 29 U.S.C § 207(a). However, those employed in an executive, administrative, or professional capacity are subject to a specific exemption from this overtime pay eligibility. 29 U.S.C. § 213. The issue in this case is whether plaintiffs at all times fit within this exemption and therefore were not entitled to overtime pay.

The Department of Labor has promulgated specific regulations implementing the FLSA exemptions. *See* 29 C.F.R. §§ 541.1, 541.2, 541.3. These regulations state that in order to be exempt from overtime pay requirements, an employee must be paid on a salaried rather than an hourly basis, and his employment must be of a bona fide administrative, professional, or executive nature. *Id.* Whether an employee qualifies for this exemption is determined by applying two tests contained in these regulations.

Under the "long test," an employee's duties are examined on a workweek basis. If an employee spends more than 20% of his hours in each workweek performing non-administrative duties, then he may not be treated as exempt under this test. 29 C.F.R. § 541.2. However, if an employee earns a salary of more than $250 per week, his exempt status is determined using a "short test." Under this test, an employee is exempt from the overtime provisions so long as (1) the employee's primary duty consists of the performance of office or non-manual work directly related to management or general business operation; and (2) the employee customarily and regularly exercises discretion and independent judgment. 29 C.F.R. § 541.214.

All of the plaintiffs in this case earn more than $250 a week, and they admit that under ordinary circumstances they are properly classified under the short test as administrative employees exempt from the overtime provision of FLSA. They argue, however, that during the five weeks out of every eighteen months that they perform nonexempt outage-related tasks, their status should change. We disagree.

A.

First, plaintiffs contend that each workweek should be viewed independently for purposes of applying the FLSA regulations. There-

fore, they argue that they are entitled to overtime pay for each week that their primary duty was not administrative in nature. The short test under which these employees' status must be determined, however, contains no mention of a workweek standard.

In *Marshall v. Western Union Telegraph Co.*, 621 F.2d 1246 (3d Cir. 1980), the Third Circuit specifically rejected a similar attempt to import a workweek standard into the short test. In *Marshall*, the Secretary of Labor sought to require an employer to pay overtime wages to managerial employees who, during a strike, performed functions normally performed by nonexempt employees. The court rejected the use of a workweek standard for determining these employees' exempt status, finding that the "careful inclusion of the workweek standard in [the long test] and its exclusion in the [short test] indicates that the exclusion was intentional." *Id.* at 1251.

The Third Circuit found that FLSA was meant to protect low paid rank and file employees, not higher salaried managerial and administrative employees who "are seldom the victims of substandard working conditions and low wages." *Marshall*, 621 F.2d at 1251. Thus, it was logical for the regulations to provide for greater scrutiny of the day to day duties of lower earning employees in determining their exempt status. Higher earning employees such as the plaintiffs are more likely to be bona fide managerial employees. The regulations reflect a belief that there is no need to examine the actual duties of such employees on a weekly basis to determine their exempt status. In accordance with the language of the regulations and our sister circuit's opinion in *Marshall*, we hold that the short test does not incorporate a workweek standard.

### B.

Plaintiffs further argue that even if the court does not utilize a workweek standard, SCE&G's assignment of non-exempt and non-emergency work to the plaintiffs for an extended period of time should be covered by FLSA's overtime provisions. Plaintiffs assert that because the outages are continuous periods of planned reassignment of employees, the court should focus on the five weeks of the outage in assessing whether plaintiffs' primary duties made them exempt from FLSA overtime requirements.

Nothing in the FLSA compels any particular time frame for determining an employee's primary duty. To the extent the regulations refer to time at all, it is only to provide that "a good rule of thumb [is] that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. §§ 541.103, 541.206. There is no indication of what time period this percentage is to be evaluated within. And, in fact, the regulations explicitly state "time alone, however, is not the sole test," and that any assessment of primary duty should "be based on all the facts in a particular case." *Id.* It is clear from this language that primary duty is meant to be assessed by the totality of the circumstances. Thus, the regulations go on to explain that "where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." *Id.* These factors might include "the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor." *Id.*

The district court found that the plaintiffs' primary duties were administrative in nature. In doing so, it utilized an eighteen month time frame and found that the performance of nonexempt work for five or six weeks out of every eighteen months could not alter the plaintiffs' exempt status. The use of an eighteen month framework is not compelled by the regulations. But neither is it without basis. Eighteen months comprises the natural business cycle of the power plant. Assessing employees' duties on the basis of one business cycle is a common sense means of determining the primary duties of those employees. And the district court here correctly determined that plaintiffs' customary and regular tasks are administrative in nature. Plaintiffs are therefore not entitled to overtime pay.

### III.

Plaintiffs' approach to FLSA is untenable. Their interpretation of the regulations would spawn disputes over the contours of the administrative exemption. For example, lawyers would have to hash out how many days or hours a management employee could do non-

exempt work before his primary duty is no longer managerial or administrative in nature. And courts would have to decide whether a given decision to utilize management or administrative employees for nonexempt tasks was made on an emergency basis or was planned by a company in advance, a distinction not always easily made.

The language and structure of the FLSA regulations call for an holistic approach to determining an employee's primary duty. We cannot reject this approach in favor of day by day scrutiny of the tasks of managerial or administrative employees. Nothing in the "primary duty" test of 29 C.F.R. § 541 suggests, much less compels, companies to handle management employees under one set of rules when they are performing administrative duties and another when they perform nonexempt tasks. The regulatory burden that would result from such an approach would be significant as employees who "are not normally required to keep time sheets or punch time clocks" would have to "keep records on a daily or weekly basis of their time spent performing a given task." *Marshall*, 621 F.2d at 1251, 1254. The prospect of such additional record keeping might in turn deprive businesses of flexibility in the assignment of salaried managers to occasional, but necessary, company tasks.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*