PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY DARVEAU,

*Plaintiff-Appellant,*

v.

DETECON, INCORPORATED,

*Defendant-Appellee.*

⎫
⎬
⎭

No. 06-2092

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:05-cv-01127-GBL)

Argued: December 6, 2007

Decided: January 31, 2008

Before MOTZ and GREGORY, Circuit Judges,
and Henry F. FLOYD, United States District Judge
for the District of South Carolina, sitting by designation.

---

Affirmed in part and reversed and remanded in part by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Floyd joined.

---

## COUNSEL

**ARGUED:** Harris D. Butler, III, BUTLER, WILLIAMS & SKILLING, P.C., Richmond, Virginia, for Appellant. John Francis Scalia, GREENBERG & TRAURIG, L.L.P., McLean, Virginia, for Appellee. **ON BRIEF:** William C. Tucker, BUTLER, WILLIAMS &

SKILLING, P.C., Richmond, Virginia, for Appellant. Matthew H. Sorensen, GREENBERG & TRAURIG, L.L.P., McLean, Virginia, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

After Detecon, Inc., a small wireless telecommunications consulting company, discharged one of its officers, Larry Darveau, he brought this action, alleging that Detecon had not paid him overtime in violation of the Fair Labor Standards Act of 1938 ("FLSA" or the "Act"), 29 U.S.C. § 207 (2000). Fifteen days later, Detecon filed a fraud suit in state court against Darveau. Darveau then amended his complaint in this case to allege that Detecon's lawsuit constituted an illegal retaliatory action under 29 U.S.C. § 215(a)(3) (2000) of the FLSA. The district court dismissed Darveau's retaliation claim for failure to state a cause of action, and the court granted summary judgment to Detecon on Darveau's remaining claims. We affirm in part and reverse and remand in part.

I.

Larry Darveau initially worked as an independent contractor for Detecon. On April 1, 2003, Detecon hired Darveau as Director of Sales, North America, with an annual salary of $150,000, a commission on all revenue Darveau generated, and a bonus for meeting specified sales goals. Eight months later, Detecon promoted Darveau to — or, more accurately, "retitled" him as — Vice President of Sales, North America, a position in which he earned essentially the same pay. Throughout this period, Darveau's employment duties appear to have changed little from his work as an independent contractor, except that, when made Vice President of Sales, Darveau became a member of Detecon's Executive Team.

On December 27, 2004, Detecon notified Darveau that it was eliminating his position and terminating his employment agreement effective January 31, 2005. A month later, Detecon and Darveau entered

into a "Commission Settlement and Release Agreement," which provided that Detecon would pay Darveau $50,000 in return for Darveau's agreement not to sue Detecon regarding "commission claims." The agreement did not, however, specify any release from possible claims under the FLSA, and no party contends on appeal that the agreement bars any of the claims at issue in this case.

On August 1, 2005, Darveau filed a complaint against Detecon in federal district court, seeking, *inter alia*, compensation for unpaid overtime under the FLSA. Two weeks later, Detecon filed an action in the Circuit Court of Fairfax County, Virginia, against Darveau, alleging fraud and fraudulent concealment arising out of a sales contract whose termination Darveau assertedly hid in order to meet his annual bonus of $50,000. Detecon later amended its complaint in state court to substitute claims for breach of contract and constructive fraud related to these same incidents. In response, Darveau amended his own federal complaint to include both a breach of contract and retaliation claim, contending that Detecon's action constituted retaliation under the FLSA in violation of 29 U.S.C. § 215(a)(3). Darveau then removed Detecon's state court action to federal court; that action was consolidated with Darveau's suit and treated as a counterclaim.

The district court granted Detecon's motion to dismiss Darveau's retaliation claim under Rule 12(b)(6). The court granted summary judgment to Detecon on the overtime compensation and breach of contract claims, and to Darveau on Detecon's counterclaims for constructive fraud and breach of contract claims. Only Darveau appeals.

## II.

Darveau initially argues that the district court erred in granting summary judgment to Detecon on his FLSA overtime compensation claim. We disagree.

The FLSA establishes the general rule that employers must compensate each employee "at a rate not less than one and one-half times the regular rate" for all overtime hours that an employee works. 29 U.S.C. § 207(a)(1). The Act defines overtime as employment in excess of forty hours in a single workweek, *id.*, but exempts from the general rule "any employee employed in a bona fide executive,

administrative, or professional capacity," *id.* § 213(a)(1) (2000). An employer bears the burden of proving that a particular employee's job falls within such an exemption. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 7 (1st Cir. 1997). Additionally, "the remedial nature of the statute requires that FLSA exemptions be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit.'" *Id.* (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). We review *de novo* the district court's grant of summary judgment in favor of Detecon, applying the same standard as did the district court and construing the facts in the light most favorable to Darveau, the non-moving party. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (2007).

The Secretary of Labor, as directed by statute, has adopted regulations defining a bona fide administrative employee, as that term is used in 29 U.S.C. § 213(a)(1). 29 C.F.R. § 541.200 (2006). Although the Secretary amended these regulations effective August 23, 2004 — in the middle of Darveau's tenure at Detecon — the amendments do not significantly change the criteria for the administrative exemption in Darveau's case. *Compare* 29 C.F.R. §§ 541.2, 541.214(a) (2003) *with* 29 C.F.R. § 200(a) (2006); *see also* Dep't of Labor, Op. Ltr., FLSA2006-11 at 3 (Sept. 8, 2006), *available at* http://www.dol.gov/esa/whd/opinion/FLSA/2007/2007_02_08_06_FLSA.pdf. An employee qualifies for the administrative exemption under both sets of regulations if (1) the employee is compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $250 per week under the former regulations and not less than $455 per week under the revised regulations; (2) the employee's primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200 (2006); 29 C.F.R. § 541.214 (2003).

Indisputably, Darveau's annual compensation of $150,000 satisfies the salary requirement. Although salary alone is not dispositive under the FLSA, we note that the "FLSA was meant to protect low paid rank and file employees" and that "[h]igher earning employees . . . are

more likely to be bona fide managerial employees." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Notwithstanding this annual salary, Darveau argues that Detecon has not demonstrated that he meets either of the other two requirements.

First, relying on *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir. 1991), and certain Department of Labor Opinion Letters, Darveau contends that he did not perform work "directly related to the management or general business operations of the employer." *See* 29 C.F.R. § 541.200 (2006). Darveau insists that, as an inside salesman whose primary duty was to sell Detecon's consulting services to current and prospective clients, he did not participate in the general management of the company. Second, Darveau maintains that his duties did not include "the exercise of discretion and independent judgment with respect to matters of significance," *see id.*, because he assertedly lacked the authority to make independent decisions free from supervision and never acted in a leadership or supervisory role.

In fact, a review of the evidence unquestionably reveals that Darveau does fall within the administrative exemption. Unlike the wholesale salespersons in *Martin*, 940 F.2d at 902-07, who simply sold from their offices the employer's inventory of electronic goods to industrial buyers and government organizations, Darveau played a significant role in projecting Detecon's "public face" and carrying its services to the telecommunications industry. In this capacity, Detecon gave Darveau wide latitude to use his "lengthy industry experience and contacts." The company empowered him to approach current and potential clients, discern the possible range of their wireless telecommunications needs, and then relay this information to the technical staff at Detecon's main office. The technical staff would craft an individually tailored package of consulting services playing to Detecon's strengths. Darveau would then integrate this technical information with a pricing structure he was provided and construct a formal proposal that he would polish and present to the potential client. If the client expressed interest, Darveau would work with other members of Detecon's management team to negotiate some of the terms of the contract and conclude the sale.

Numerous other undisputed facts demonstrate that Darveau's duties involved the performance of "office . . . work directly related

to the . . . general business operations of the employer or the employer's customers," which required the "exercise of discretion and independent judgment with respect to matters of significance." *See* 29 C.F.R. § 541.200 (2006); 29 C.F.R. § 541.214 (2003). As a member of Detecon's Executive Team, Darveau helped to shape Detecon's general business policies, for instance, by proposing revisions to Detecon's travel and expense policy. He worked closely with CEO Eckart Pech in hiring two additional directors of sales. In the company's unsuccessful bid to assist T-Mobile in its assumption of the Cingular GSM Network in California, Darveau's own emails describe his role as the "overall project manager" for the proposal, acting, in his words, as the "gate keeper" who "coordinate[d] . . . that effort to make sure it got done." Finally, in June of 2007 and 2008, Darveau presented sales status reports that recommended strategies to develop additional business in the telecommunications market, identifying major accounts and proposing specific steps for advancing Detecon's share in those industry segments.

Darveau's significant role in conducting both specific sales and shaping Detecon's more general market strategy, as well his participation in the company's overall management and hiring policy, was thus wholly unlike the "routine selling efforts focused simply on particular sales transactions" at issue in *Martin*. 940 F.2d at 905. Rather, Darveau's duties more nearly approximate the exempt duties described in *Martin* involving "marketing activity aimed at promoting (i.e., increasing, developing, facilitating and/or maintaining) customer sales *generally*." *Id.* (emphasis in original). Indeed, Darveau's duties are akin to the activities of the insurance marketing representatives found to be within the administrative exemption in *Reich*, 126 F.3d at 3-4, 10. The *Reich* representatives, like Darveau, did more than sell a predetermined product; they had to cultivate business relationships and keep agents apprised of how different products might satisfy the particular needs of prospective end clients, while exercising a significant degree of autonomy regarding client contact. *Id.* at 3-4; *see also Cash v. Cycle Craft Co.*, No. 07-1768, 2007 WL 4111921, at *2-6 (1st Cir. Nov. 20, 2007); *Schwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 704-06 (S.D.N.Y. 2005); *Wilshin v. Allstate Ins. Co.*, 212 F. Supp. 2d 1360, 1375-79 (M.D. Ga. 2002).

Given the full range of Darveau's employment duties, Darveau falls within the requisites of the administrative exemption. The district

court properly granted summary judgment to Detecon on Darveau's FLSA overtime compensation claim.

## III.

Having rejected Darveau's FLSA overtime compensation claim, we now consider his retaliation claim, which the district court dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Darveau maintains that by filing a fraud suit against him, which he alleges is without basis in fact or law, a mere fifteen days after he filed his action for FLSA overtime compensation, Detecon unlawfully retaliated against him in violation of the FLSA.

The retaliation provision of the FLSA is a central component of the Act's complaint-based enforcement mechanism. "To secure [employer] compliance with the substantive provisions of the FLSA, Congress 'chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 363 (4th Cir. 2000) (quoting *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).

The retaliation provision renders it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). The provision therefore effectuates enforcement of the Act's substantive provisions by removing "fear of economic retaliation" so that employees need not "quietly . . . accept substandard conditions." *Mitchell*, 361 U.S. at 292. As we recognized in *Ball*, we must interpret the retaliation provision "bearing in mind the Supreme Court's admonition that the FLSA 'must not be interpreted or applied in a narrow, grudging manner.'" *Ball*, 228 F.3d at 364 (quoting *Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)).

A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal

connection exists between the employee's activity and the employer's adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). Detecon does not contend, and the district court did not hold, that Darveau's complaint fails to allege facts establishing the third prong, a causal connection between Darveau's FLSA overtime claims and Detecon's claims against him for fraud. Detecon argues that Darveau's complaint fails to establish the first two prongs.

A.

As to the first prong, Detecon conceded before the district court that Darveau not only alleged but actually engaged in protected activity in filing his complaint for overtime pay under the FLSA.[1] On appeal, however, Detecon argues to the contrary. In the interest of judicial economy, we address the contention, even though not raised below.

Relying on *Burnette v. Northside Hosp.*, Detecon maintains that Darveau must not only show that "he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented." 342 F. Supp. 2d 1128, 1134 (N.D. Ga. 2004) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Detecon argues Darveau had no such objectively reasonable belief because Department of Labor regulations explicitly offer as examples of exempt administrative duties Darveau's own primary employment duties. *See* 29 C.F.R. § 541.201(b) (2006).

Assuming, without deciding, that a FLSA retaliation plaintiff must allege facts demonstrating that he had an objectively reasonable belief that his employer violated the FLSA, we believe that Darveau met

---

[1]In its Motion to Dismiss before the district court, Detecon stated: "While Detecon does not dispute that Darveau engaged in a statutorily protected activity when he filed the present action against Detecon, Detecon asserts that its state law action against Detecon [sic] does not constitute an 'adverse action by the employer' as that prong has been interpreted by the courts." R. on Appeal, Doc. No. 36, at 4.

this burden. Although we have rejected his overtime claim, it was an "objectively reasonable" claim when considered "in light of the facts and record presented." Several features of Detecon — its extremely small size, its project-driven management structure, and its focus on on-site consulting — complicate the application of the key terms of the FLSA's wage and hours exemptions to Darveau. Although Darveau's overtime compensation claim ultimately fails, Darveau did not allege an objectively unreasonable claim in light of these facts.

### B.

Detecon's principal argument, and the basis for the district court's dismissal of Darveau's retaliation claim, rests on the second prong of the prima facie case — the employee must have suffered an adverse action by the employer subsequent to or contemporaneous with the protected activity. *Wolf*, 200 F.3d at 1342-43; *Conner*, 121 F.3d at 1394.

Darveau notes that the Supreme Court has expressly held that a lawsuit filed by an employer against an employee can constitute an act of unlawful retaliation under another federal statute governing employment rights when the lawsuit is filed with a retaliatory motive and lacking a reasonable basis in fact or law. *See Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 744 (1983); *see also BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 528-37 (2002) (affirming *Bill Johnson's* holding, stressing that only those lawsuits that are retaliatory in intent and baseless in fact or law do not implicate First Amendment and federalism concerns). Darveau's complaint alleges Detecon filed its lawsuit with retaliatory motive and without any reasonable basis in fact or law.

Nevertheless, the district court held, relying on older Title VII cases (which Detecon had cited to the court), that in order to establish an FLSA retaliation claim, Darveau had to demonstrate that he suffered a materially adverse employment action involving an ultimate employment decision related to hiring, leave, discharge, promotion, or compensation. The court reasoned that because Darveau had left Detecon's employment six months prior to filing his FLSA suit, he could not possibly have suffered *any* employment action, adverse or otherwise, from Detecon. Requiring a FLSA retaliation plaintiff to

allege and prove a materially adverse *employment* action would of course have the practical effect of declaring that the FLSA's prohibition applies to retaliation exclusively against current, and not former, employees.

This rationale rests on outdated Title VII precedent. The Supreme Court has now clearly rejected this view. In *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-46 (1997), the Court explicitly held that for purposes of Title VII's retaliation provision, "employee" encompasses former, as well as current, employees. Even more recently, in *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414 (2006), the Court held that a Title VII retaliation plaintiff need not allege or prove an ultimate adverse employment action, because "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." The Court ruled that Title VII's retaliation provision requires a plaintiff simply to allege and prove "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (citations and internal quotation marks omitted).

Although throughout this litigation Detecon has relied on Title VII cases, it now insists that we should not give weight to *Robinson* and *Burlington Northern* in construing the FLSA. In so arguing, Detecon not only ignores its own reliance on Title VII cases, but also the almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes. *See, e.g.*, *McKennon v. Nashville Banner Publ'g. Co.*, 513 U.S. 352, 357-61 (1995) (interpreting the Age Discrimination in Employment Act ("ADEA")); *Garcia v. Johanns*, 444 F.3d 625, 631-33 & n.7 (D.C. Cir. 2006) (interpreting the Equal Credit Opportunity Act); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (interpreting the retaliation provision of the Americans with Disabilities Act). Of particular note here, we and other courts have looked to Title VII cases in interpreting the FLSA. *See Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 305-07 (4th Cir. 2004); *Nichols v. Hurley*, 921 F.2d 1101, 1103-10 (10th Cir. 1990); *Brewster v. Barnes*, 788 F.2d 985, 990 & n.7 (4th Cir. 1986). Of course, we must take care to respect any differences

in language and purpose between Title VII and the FLSA. *See Ball*, 228 F.3d at 363-65 (noting differences in the protected activities enumerated in the FLSA's retaliation provisions and those specified in Title VII).

But we find no significant differences in either the language or intent of the two statutes regarding the type of adverse action their retaliation provisions prohibit. The FLSA and Title VII contain identical general definitions of "employee." *Compare* 29 U.S.C. § 203(e)(1) (2000) (FLSA) *with* 42 U.S.C. § 2000e(f) (2000) (Title VII); *see also United States v. Rosenwasser*, 323 U.S. 360, 362 (1945) (declaring with regard to the FLSA that "[a] broader or more comprehensive coverage of employees within the stated categories would be difficult to frame."). Moreover, both statutes provide the same broad definition of a prohibited retaliatory act; each statute renders it unlawful to "discriminate against" any employee who has engaged in the described protected activities. *Compare* 29 U.S.C. § 215(a)(3) (FLSA) *with* 42 U.S.C. § 2000e-3(a) (2000) (Title VII). The similar statutory language suggests that the Supreme Court's interpretation of "employee" in *Robinson* — to include former as well as current employees — and definition of retaliatory acts in *Burlington Northern* similarly apply in the FLSA context.

Although the two statutes seek to combat separate workplace problems, the purpose of their retaliation provisions is one and the same — namely, to secure their substantive protections "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington Northern*, 126 S. Ct. at 2412. Indeed, in *Robinson*, the Court relied on a FLSA case to support its conclusion that the "primary purpose" of Title VII's anti-retaliation provision was to "[m]aintain[ ] unfettered access to statutory remedial mechanisms." 519 U.S. at 346 (citing *Mitchell*, 361 U.S. at 292-93). Furthermore, the underlying legislative purpose of the FLSA, although different, is just as expansive and important as that of Title VII. *See* 29 U.S.C. § 202(a) (2000) (explaining the purpose of the FLSA as the elimination of "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers").

Somewhat surprisingly, Detecon contends that looking to the Supreme Court's Title VII jurisprudence in this FLSA case will generate the "anomalous result" of extending protection from retaliation to former employees who no longer enjoy the substantive protections of the FLSA. Br. of Appellee at 50. Yet in *Burlington Northern*, the Court rejected this very argument in the Title VII context, observing that Title VII's anti-retaliation provision serves a different purpose than its substantive provisions and that such "differences in . . . purpose . . . remove any perceived 'anomaly.'" 126 S. Ct. at 2414. The more unfortunate anomaly would be if an employee's underlying FLSA claim could be brought after he quit, but the employee's protection from retaliation ended when the employee stepped beyond the employer's doorstep.

Our conclusion accords with that reached by our sister circuits. The Tenth Circuit has held that an employer's third-party complaint for indemnity against four former employers could, as a matter of law, qualify as unlawful retaliation under the FLSA. *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1406-08 (10th Cir. 1992). Similarly, the Sixth Circuit has concluded that the FLSA retaliation provision should extend to former employees: "There is nothing in the language or history of [the FLSA] to indicate that Congress intended to penalize dissatisfied employees who voluntarily leave an employer by thereafter denying them the protections of [the Act]. There is every reason to conclude precisely the contrary." *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 147 (6th Cir. 1977). The Fifth Circuit has likewise recognized that the FLSA protects former employees from retaliation, and not merely current ones. *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972). Former employees require such protection because they often need references from past employers, they may face retaliation from new employers who learn they have challenged the labor practices of previous employers, and they sometimes must return to past employers for a variety of reasons, putting them once more at risk of retaliation. *Id.*

For all these reasons, we hold that the district court clearly erred in requiring Darveau to allege that his employer retaliated against him with a "materially adverse employment action." Rather, a plaintiff asserting a retaliation claim under the FLSA need only allege that his

employer retaliated against him by engaging in an action "that would have been materially adverse to a reasonable employee" because the "employer's actions . . . could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 126 S. Ct. at 2409. Darveau has alleged such an action here, i.e., that his employer filed a lawsuit against him alleging fraud with a retaliatory motive and without a reasonable basis in fact or law. We therefore must reverse the judgment of the district court dismissing Darveau's retaliation claim and remand for further proceedings consistent with this opinion.[2]

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED IN PART AND*
*REVERSED AND REMANDED IN PART.*

---

[2]Detecon has also moved for judicial notice of a subsequent age discrimination charge brought by Darveau against Detecon, alleging unlawful retaliation under the ADEA, 29 U.S.C. § 623(d) (2000). We grant Detecon's motion and take judicial notice of this fact. That Darveau has filed an ADEA retaliation claim does not, however, invalidate his FLSA retaliation complaint. We deny as moot, Darveau's motion for leave to respond.