Leroy **KENTISH,** on his own behalf and others similarly situated, Plaintiff,

v.

**MADAHCOM, INC.,** Defendant.

Case No. 8:08–cv–44–T–30MSS.

United States District Court, M.D. Florida, Tampa Division.

July 16, 2008.

Andrew Ross Frisch, Morgan & Morgan, PA, Davie, FL, for Plaintiff.

Donald C. Works, III, Jackson Lewis, LLP, Orlando, FL, for Defendant.

## ORDER

JAMES S. MOODY, JR., District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 18) and Defendant Madahcom, Inc.'s ("Defendant") Memorandum of Law in opposition to the same (Dkt. 19). The Court, having reviewed the Motion and opposing Memorandum, determines the Motion should be denied.

## Background

Plaintiff Leroy Kentish ("Plaintiff") filed the instant action for unpaid overtime compensation on behalf of himself and similarly situated employees of Defendant. Plaintiff claims Defendant failed to comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201–209 (the "FLSA"), by failing to properly compensate its hourly employees for hours worked in excess of forty within a work week.

In response, Defendant filed a Counterclaim seeking payment of business related expenses allegedly charged by Plaintiff to a commercial credit card pursuant to the terms of a Company Credit Card Agreement. Defendant alleges that although it reimbursed Plaintiff for expenses charged to the card, Plaintiff failed to subsequently make payments to the credit card company.

Plaintiff now seeks leave to amend his Complaint to include two additional claims. Plaintiff first seeks to assert a claim for retaliation under the FLSA pursuant to 29 U.S.C. § 215(a)(3). Plaintiff argues Defendant's Counterclaim is unlawful retaliation for the exercise of Plaintiff's rights in filing the instant action. Plaintiff also seeks to add a claim for breach of contract, arguing Defendant failed to pay him per diem money allowances and reimbursement expenses in breach of a written employment contract/agreement.

## Discussion

Pursuant to Federal Rule of Procedure 15(a), a district court should allow amendment of a pleading after a responsive pleading has been filed "when justice so requires." However, a district court may deny a party leave to amend when such amendment would be futile. *Hall v. United Ins. Co. of America,* 367 F.3d 1255, 1262 (11th Cir.2004) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). The denial of leave

to amend for futility is justified when the complaint as amended is still subject to dismissal. *Id.* (citing *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999)). Accordingly, the Court will examine Plaintiffs proposed claims for futility.

## I. Retaliation

■ Plaintiff argues Defendant's counterclaim constitutes illegal retaliation under the FLSA pursuant to the Fourth Circuit's recent decision in *Darveau v. Detecon, Inc.,* 515 F.3d 334 (4th Cir.2008). In *Darveau,* the plaintiff was discharged from employment as an officer of a small telecommunications consulting company. *Id.* at 336. Following his termination, the plaintiff, who had been paid an annual salary of $150,000.00, filed an action for unpaid overtime compensation under the FLSA. *Id.* Fifteen days later, the company filed a fraud suit in state court alleging the plaintiff had fraudulently concealed a terminated sale in order to qualify for his annual bonus. *Id.* The plaintiff then amended his complaint in federal court, alleging the company's lawsuit constituted an illegal retaliatory action under 29 U.S.C. § 215(a)(3).[1] *Id.* The district court granted summary judgment on the overtime compensation claim and dismissed the retaliation claim for failure to state a cause of action. *Id.*

On appeal, the Fourth Circuit found the district court had properly granted summary judgment on the overtime compensation claim. However, the court reversed the dismissal of the retaliation claim. Citing *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 744, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), and *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 528–37,

122 S.Ct. 2390, 153 L.Ed.2d 499 (2002), the Fourth Circuit recognized that

> the Supreme Court has expressly held that a lawsuit filed by an employer against an employee can constitute an act of unlawful retaliation under another federal statute governing employment rights when the lawsuit is filed with a retaliatory motive and lacking a reasonable basis in fact or law.

*Id.* at 341. After determining the plaintiff sufficiently alleged the employer had filed suit with a retaliatory motive and without a reasonable basis in fact or law, the Fourth Circuit reversed the district court's dismissal of the retaliation claim. *Id.* at 343,

### A. *Bill Johnson's and BE & K*

The *Darveau* court based its holding, in part, on the United States Supreme Court's decisions in *Bill Johnson's* and *BE & K,* A review of those cases is appropriate in considering the instant action.

In *Bill Johnson's,* a waitress filed charges with the National Labor Relations Board (the "Board") against her former employer alleging she was fired as a result of her efforts to organize a union. *Bill Johnson's,* 461 U.S. at 731, 103 S.Ct. 2161. After conducting an investigation, the Board issued a complaint against the employer. *Id.* at 733, 103 S.Ct. 2161. On the same day, the waitress and other individuals picketed the employer's restaurant and encouraged customers to boycott the restaurant. *Id.* The picketing lasted for a few days, during which the waitresses distributed leaflets referencing the NLRB complaint. *Id.* at 734, 103 S.Ct. 2161.

A few days after the picketing began, the employer filed suit in state court against the protestors, alleging they had

---

1. The state court action was subsequently removed to federal court and consolidated with the plaintiff's FLSA action. *Id.*

engaged in mass picketing, harassed customers, blocked access to the restaurant, threatened public safety, and libeled the employer. *Id.* The next day, the waitress filed a second charge with the Board alleging new unfair labor practices, including a charge that the employer filed the civil suit in retaliation for her filing charges with the Board. *Id.* Following an administrative hearing, the Board issued a cease and desist order to halt the employer's state court action. *Id.* at 737, 103 S.Ct. 2161. After the Ninth Circuit enforced the Board's order in its entirety, the Supreme Court granted certiorari to consider whether the Board could properly enjoin the employer from maintaining its state court action.

The Court recognized the chilling effect an employer's state lawsuit could have on an employee's willingness to engage in protected activity, particularly when the employer seeks damages in addition to injunctive relief. *Id.* at 741, 103 S.Ct. 2161. Where such a suit "is filed against hourly-wage waitresses or other individuals who lack the backing of a union, the need to allow the Board to intervene and provide a remedy is at its greatest." *Id.* However, the Court further recognized that

> [t]here are weighty countervailing considerations, however, that militate against allowing the Board to condemn the filing of a suit as an unfair labor practice and to enjoin its prosecution. In *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972), we recognized that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances. Accordingly, we construed the antitrust laws as not prohibiting the filing of a lawsuit, regardless of the plaintiff's anticompetitive intent or purpose in doing

so, unless the suit was a "mere sham" filed for harassment purposes. *Id.,* at 511, 92 S.Ct., at 612. We should be sensitive to these First Amendment values in construing the NLRA in the present context. As the Board itself has recognized, "going to a judicial body for redress of alleged wrongs ... stands apart from other forms of action directed at the alleged wrongdoer. The right of access to a court is too important to be called an unfair labor practice solely on the ground that what is sought in court is to enjoin employees from exercising a protected right" *Peddie Buildings,* 203 N.L.R.B. 265, 272 (1973), enforcement denied on other grounds, *NLRB v. Visceglia,* 498 F.2d 43 (C.A.3 1974). See also *Clyde Taylor Co.,* 127 N.L.R.B. 103, 109 (1960).

*Id.* Considering the First Amendment right to petition, together with the State interest of protecting the health and well being of citizens, the Court rejected the Board's decision, holding "[t]he filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff s desire to retaliate against the defendant for exercising rights protected by the Act." *Id.* at 742–43, 103 S.Ct. 2161.

However, the Court went on to hold "that it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of rights protected by § 7 of the [National Labor Relations Act ("NLRA")]." *Id.* at 744, 103 S.Ct. 2161. Analogizing the "mere sham" exception in the antitrust context adopted in *California Motor Transport, supra.,* the Court recognized sham litigation is not a bona fide grievance and does not come within the First Amendment right to petition. *Id.* at 743, 103 S.Ct. 2161. The Court went on to

discuss the appropriate inquiry for considering whether a claim has a reasonable basis, noting that "[a]though the Board's reasonable basis inquiry need not be limited to the bare pleadings, if there is a genuine issue of material fact that turns on the credibility of a witness or on the proper inferences to be drawn from undisputed facts, it cannot, in our view, be concluded that the suit should be enjoined." *Id.* at 744–45, 103 S.Ct. 2161.

In *BE & K,* the Supreme Court reexamined the scope of the right to petition in considering whether the Board could impose liability on an employer "for filing a losing retaliatory lawsuit, even if the employer could show the suit was not objectively baseless." *BE & K,* 536 U.S. at 524, 122 S.Ct. 2390. Considering the same First Amendment implications raised in *Bill Johnson's,* the Court explained

> [w]e said in *Bill Johnson's* that the Board could enjoin baseless retaliatory suits because they fell outside of the First Amendment and thus were analogous to "false statements." We concluded that "[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." While this analogy is helpful, it does not suggest that the class of baseless litigation is *completely* unprotected: At most, it indicates such litigation should be unprotected "just as" false statements are. And while false statements may be unprotected for their own sake, the First Amendment requires that we protect some falsehood in order to protect speech that matters.

*Id.* at 530–31, 122 S.Ct. 2390. (internal citations omitted). Noting the difficult constitutional question, the Court recognized the protection of the First Amendment's Petition Clause is not limited to successful petitioning. *Id.* at 532, 122 S.Ct. 2390. Unsuccessful but reasonably based suits promote the public airing of disputed facts, raise matters of public concern, and add legitimacy to the court system. *Id.* Moreover, such suits cannot be analogized to false statements in the same way baseless suits can. *Id.*

The Court next addressed the issue of retaliatory motive, noting that in other First Amendment contexts the Court had found it "problematic to regulate some *demonstrably false* expression based on the presence of ill will." *Id.* at 534, 122 S.Ct. 2390. Again noting the difficult constitutional question at hand, the Court avoided the First Amendment question by narrowly construing the NLRA to reject the Board's standard for imposing liability. In a concurring opinion, Justice Scalia stated "the implication of our decision today is that, in a future appropriate case, we will construe the [NLRA] in the same way we have already construed the Sherman Act: to prohibit only lawsuits that are both objectively baseless and subjectively intended to abuse the process." *BE & K,* 536 U.S. at 537, 122 S.Ct. 2390 (Scalia, J., concurring, with whom Thomas, J., joins).

### B. *The Petition Clause and Florida's Litigation Privilege*

In both *Bill Johnson's* and *BE & K,* the Supreme Court analogized the right to petition under the First Amendment with the right to freedom of speech, recognizing that baseless litigation, like a false statement, is not immunized by the First Amendment. The Supreme Court considered the interrelationship of these rights in *McDonald v. Smith,* 472 U.S. 479, 480, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), in addressing whether the First Amendment's Petition Clause provides absolute immunity from damages for libel. The Court held the Petition Clause "does not

require the State to expand [the privilege for petitions to the Government] into an absolute one," stating further that the "right to petition is guaranteed; the right to commit libel with impunity is not." *Id.* at 485, 105 S.Ct. 2787.

In the instant case, Defendant's Counterclaim for breach of contract was brought under Florida law. Accordingly, the Court must apply Florida law in evaluating Defendant's state law claim. *Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1274–5 (11th Cir.2004). While the Supreme Court in *McDonald* did not require states to expand the right to petition, it also did not restrict it. With this in mind, the Court turns to Florida's treatment of the right to petition.

 Historically, Florida courts have vigorously protected its citizens' access to courts. Article I, Section 21 of the Florida Constitution, entitled "Access to Courts," provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.²" In protecting this right, Florida courts recognize a "litigation privilege," which affords absolute immunity for acts occurring during the course of judicial proceedings. *Jackson,* 372 F.3d at 1274.

Initially, the privilege was designed to protect litigants and attorneys from defamation actions. *Id.* As stated by the Florida Supreme Court, "[t]he law in Florida has long been that defamatory statements made in the course of judicial proceedings are absolutely privileged, and no cause of action will lie, regardless of how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry." *Fridovich v. Fri-*

*dovich,* 598 So.2d 65, 66 (Fla.1992). In *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So.2d 606, 607–08 (Fla.1994), the Florida Supreme Court expanded the privilege to cover all acts related to and occurring within judicial proceedings, stating:

[a]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Id.* (citing *Levin,* 639 So.2d at 608). The Eleventh Circuit has mandated that "Florida's litigation privilege applies to the state-law claims adjudicated in federal court." *Id.* at 1274–75.

### C. *Analysis*

If the Court were to adopt the Fourth Circuit's holding in *Darveau,* it would need to determine whether Plaintiffs retaliation claim sufficiently alleges that Defendant filed its Counterclaim with a retaliatory motive and without a reasonable basis in fact or law. As a preliminary matter, the Court notes Plaintiff has failed to allege the Counterclaim was filed without a reasonable basis in fact or law.³ Neverthe-

---

**2.** This clause is similar to the First Amendment's Petition Clause, which provides in pertinent part that "Congress shall make no law ... abridging ... the right of the people ...

to petition the Government for a redress of grievances."

**3.** Plaintiff alleges the Counterclaim "was in retaliation for Plaintiffs exercising his rights

less, even if Plaintiff had made such an allegation, his claim would be barred by Florida's litigation privilege.

The right to petition has been recognized as one of "the most precious of the liberties safeguarded by the Bill of Rights," and implies "the very idea of government in a republican form." *BE & K,* 536 U.S. at 524–5, 122 S.Ct. 2390. Florida's staunch protection of this right is evident in both its Constitution and the application of the litigation privilege by its courts. Allowing Plaintiff to maintain its retaliation claim would restrict Defendant's access to courts and its right to petition. Absent evidence of Congressional intent to override the litigation privilege as developed by states, the Court concludes Florida's litigation privilege applies to Defendant's Counterclaim.[4] Accordingly, Plaintiff's proposed claim for retaliation is futile, and his Motion should he denied to the extent it seeks to add Count II.[5]

Furthermore, adopting the Fourth Circuit's holding in *Darveau* would require a judge to consider an asserted retaliatory action to see if it has a reasonable basis in fact or law. An action filed without a reasonable basis can adequately be handled by litigation sanctions. *See BE & K,* 536 U.S. at 537, 122 S.Ct. 2390 (noting "nothing in our holding today should be read to question the validity of common litigation sanctions imposed by courts themselves-such as those authorized under Rule 11 of the Federal Rules of Civil Procedure-or the validity of statutory provisions that merely authorize the imposition of attorney's fees on a losing plaintiff"). If upon proper motion the Court determines Defendant's Counterclaim is merely a sham pleading, the Court may impose sanctions against Defendant and its attorney.[6]

## II. Breach of Contract

■ Defendant argues Plaintiff's proposed breach of contract claim was brought in bad faith because Plaintiff was aware of the facts giving rise to this claim at the time he filed his original Complaint. Defendant argues this claim is an attempt to penalize Defendant for exercising its right to file a Counterclaim. The Court agrees Plaintiff should have raised this claim at the time of his original Complaint and determines Plaintiff's Motion should be denied to the extent it seeks to add this claim. However, the Court will consider

---

pursuant to the FLSA," but does not allege it was filed without a reasonable basis.

4. Moreover, allowing Plaintiff to proceed with his retaliation claim runs the risk of creating a "race to the courthouse." For example, if an employer files first, the filing can not be considered to be in retaliation for an act that has not yet occurred, to wit: the filing of the FLSA claim. But, an employer may elect not to file a legitimate claim for economic reasons, such as the payment of court costs and attorney's fees. If the employee is the first to file, the employer, no longer restrained by the same economic considerations, would be chilled from filing a reasonably based counterclaim that might form the basis of a retaliatory action. Such a result would unfairly burden the employer's right to petition.

5. The Court does not intend to address a federal court's power to enjoin a baseless retaliatory state law action after it has been determined the action is both retaliatory and brought only for the purpose of eviscerating federal rights. To enjoin an action does not run afoul of a litigation privilege as would a cause of action based on the mere filing of a complaint in court.

6. Of course, the reverse is also true. An employee should know whether an employer's claims are reasonably based or simply fabricated for retaliatory purposes. If an employee were to bring an action for retaliation (were it allowed) knowing the alleged retaliatory conduct was not baseless, the employee and his attorney would be subject to sanctions.

evidence of any unpaid per diem allowance and/or reimbursement expense as a setoff against any damages awarded to Defendant on its Counterclaim.

It is therefore ORDERED AND ADJUDGED that Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 18) is **DENIED.** Plaintiff may file an affirmative defense of setoff as to the Counterclaim.