UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 07-2017**

———————

LAURA K. THOMAS,

                    Plaintiff – Appellant,

          v.

BRANCH BANKING & TRUST COMPANY,

                    Defendant – Appellee,

          and

PAUL F. THOMAS,

                    Defendant.

———————

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.    Irene M. Keeley, District Judge.  (1:06-cv-00052-IMK)

———————

Argued:  October 30, 2008          Decided:  December 24, 2008

———————

Before WILKINSON, Circuit Judge, Samuel G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation, and Henry E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** William J. Leon, Jr., Morgantown, West Virginia, for Appellant.   Ray Cooley Stoner, JACKSON KELLY, P.L.L.C., Pittsburgh, Pennsylvania, for Appellee.  **ON BRIEF:** Jeffrey A.

Ray, Morgantown, West Virginia, for Appellant. Parween S. Mascari, JACKSON KELLY, P.L.L.C., Morgantown, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal involves a dispute between a woman, her ex-husband, and their bank. Paul Thomas pledged shares of stock to Branch Banking & Trust Company ("BB&T") as collateral for a loan. Before the loan was repaid, Mr. Thomas transferred his ownership of some of those shares to Laura Thomas, his wife at the time. The disagreement in this case centers on the number of shares that Mr. Thomas actually transferred to Ms. Thomas. When the loan was repaid, BB&T returned fewer shares to Ms. Thomas than she thought she was due. Ms. Thomas then filed suit against BB&T. BB&T defeated Ms. Thomas's claim for breach of contract on summary judgment, and BB&T defeated Ms. Thomas's claim under Article 9 of the Uniform Commercial Code at trial. Because BB&T owed no duty to Ms. Thomas to transfer or maintain the disputed shares, we affirm.

I.

Mr. Thomas and Ms. Thomas obtained a loan from One Valley Bank in 1994. One Valley Bank was the predecessor of BB&T, and the two banks are indistinguishable for the purposes of this case. As collateral for the loan, Mr. Thomas delivered to BB&T a stock certificate in Mr. Thomas's name for 8,926 shares of State Bancorp, Inc.

3

Mr. Thomas later decided to transfer ownership of some of those shares to Ms. Thomas for the purposes of estate planning. With that end in mind, Mr. Thomas, Ms. Thomas, and BB&T executed a "Collateral Transfer Agreement." The agreement stated that BB&T would permit Mr. Thomas to transfer 6,501 of the 8,926 shares into Ms. Thomas's name, but only on the condition that all 8,926 shares remained pledged to BB&T as collateral for the loan.

Two weeks after executing the collateral transfer agreement, Mr. Thomas wrote a letter to BB&T. The letter stated that Mr. Thomas planned to replace the certificate held by BB&T with two certificates, one in his name for 6,501 shares, and one in Ms. Thomas's name for 2,425 shares -- that is, the opposite of the allocation described in the collateral transfer agreement. According to State Bancorp's records, Mr. Thomas then transferred 2,425 shares to Ms. Thomas, and State Bancorp issued certificates in Mr. Thomas's name for 6,501 shares and in Ms. Thomas's name for 2,425 shares. But when Mr. Thomas delivered the new certificates to BB&T, the bank amended its collateral register receipt for the loan to state that the bank had received a certificate in Ms. Thomas's name for 6,501 shares and a certificate in Mr. Thomas's name for 2,425 shares.

When the loan was subsequently repaid, BB&T returned a certificate for 2,425 shares to Ms. Thomas. Ms. Thomas filed

4

suit and alleged that BB&T should have given her a certificate for 6,501 shares. Ms. Thomas sought damages under two legal theories. First, she claimed that BB&T had breached the collateral transfer agreement by failing to transfer ownership of 6,501 shares into her name. Second, she claimed that BB&T had breached its statutory duty to use reasonable care to preserve collateral in its possession -- namely, a stock certificate in Ms. Thomas's name for 6,501 shares -- as required by Article 9 of the Uniform Commercial Code. See W. Va. Code § 46-9-207.

The district court granted summary judgment to BB&T on Ms. Thomas's breach of contract claim. The court held that the collateral transfer agreement required only that BB&T permit Mr. Thomas to transfer shares to Ms. Thomas, not that BB&T itself transfer any shares to Ms. Thomas.

The district court allowed Ms. Thomas's statutory claim to proceed to trial. The parties stipulated that the only issue for the jury was whether BB&T had possessed a stock certificate in Ms. Thomas's name for 6,501 shares. The district court denied Ms. Thomas's motion in limine to exclude evidence of State Bancorp's stock records; those records tended to show that the disputed stock certificate never existed. The jury returned a verdict in favor of BB&T. The district court entered judgment in favor of BB&T, and Ms. Thomas appealed.

5

We first affirm the judgment in favor of BB&T on Ms. Thomas's claim under Article 9 of the U.C.C. On appeal, Ms. Thomas does not argue that the evidence presented to the jury on her statutory claim was insufficient to support the jury's verdict against her. Instead, she argues that the jury should not have seen certain evidence at all. In particular, Ms. Thomas claims that the district court erred when it denied her motion in limine and admitted evidence of State Bancorp's stock records. If the district court had granted her motion, Ms. Thomas contends, she would have prevailed on her statutory claim because the only evidence in the case would have been the collateral register receipt stating that BB&T received a certificate in Ms. Thomas's name for 6,501 shares. And Ms. Thomas argues that the district court should have granted her evidentiary motion because BB&T used the stock records only to support an improper defense of unilateral mistake.

Ms. Thomas's argument lacks merit. The issue for the jury on Ms. Thomas's Article 9 claim was whether BB&T ever possessed a stock certificate in Ms. Thomas's name for 6,501 shares. BB&T did not raise a legal defense of mistake against that claim. BB&T argued instead -- as a factual matter -- that it never possessed the disputed certificate, and that the collateral register receipt stating otherwise was incorrect. And BB&T

presented the evidence of State Bancorp's stock records to demonstrate that the collateral register receipt was in error. Those records -- which included stock certificates, stock ledgers, dividend checks, and proxy statements -- all suggested that a certificate in Ms. Thomas's name for 6,501 shares had never existed. The district court did not abuse its discretion in admitting this evidence, which went to the heart of the factual question before the jury -- indeed, this evidence adequately supported the jury's verdict in favor of BB&T. We therefore affirm both the district court's evidentiary decision and the jury's verdict on the Article 9 claim.

## III.

We also affirm the district court's grant of summary judgment in favor of BB&T on Ms. Thomas's breach of contract claim. Ms. Thomas makes the same argument on appeal that she made before the district court: that summary judgment was unwarranted because BB&T breached its obligation under the collateral transfer agreement to transfer 6,501 shares of State Bancorp stock into her name. Applying de novo review, see Darveau v. Detecon, Inc., 515 F.3d 334, 338 (4th Cir. 2008), we hold that summary judgment for BB&T was proper for the reasons stated by the district court in its opinion below.

As the district court correctly held: "Under the unambiguous terms of the collateral transfer agreement, . . . BB&T had no obligation to transfer or deliver 6,501 shares" into Ms. Thomas's name. Thomas v. Branch Banking & Trust Co., No. 1:06-cv-00052, at 1 (N.D.W. Va. Aug. 31, 2007) (memorandum opinion). The agreement stated that Mr. Thomas had requested that BB&T "'permit 6,501 shares of the Stock to be transferred'" to Ms. Thomas. Id. at 15 (quoting the agreement) (emphasis added by the district court). The district court properly observed: "This contract provision unambiguously establishes that Mr. Thomas sought permission from BB&T to access the stock certificate held as collateral . . . so that, in the future, he could transfer shares into his wife's name. It does not state that Mr. Thomas requested BB&T to transfer some of the collateral into his wife's name." Id. The agreement further stated that BB&T was "'willing to permit the requested transfer'" of 6,501 shares, but only on the condition that all 8,926 shares remained pledged as collateral. Id. at 15-16 (quoting the agreement) (emphasis added by the district court). Even though the agreement referred to the transfer of 6,501 shares, therefore, the district court correctly determined that "BB&T's sole interest in the agreement was to ensure that the total amount of shares were repledged by the Thomases following a future transfer of bank stock between them." Id. at 16.

Ms. Thomas responds by arguing that Mr. Thomas made a completed gift of 6,501 shares to Ms. Thomas through the collateral transfer agreement. Even if that were true, it does not remedy the fact that the agreement "impose[d] no duty on BB&T's part to transfer any shares of stock" to Ms. Thomas. Id. at 18. The alleged completion of the gift between Mr. Thomas and Ms. Thomas therefore cannot save Ms. Thomas's breach of contract claim against BB&T.

Thus, "all obligations under the collateral transfer agreement were fulfilled [when] BB&T permitted the transfer and Mr. Thomas repledged the entire 8,926 shares of State Bancorp stock as collateral." Id. at 19-20. Because BB&T satisfied its obligations under the collateral transfer agreement, Ms. Thomas's breach of contract claim fails as a matter of law.

The judgment of the district court is therefore

AFFIRMED.