**Laurencio Bautista CRUZ, Plaintiff,**

v.

**DON PANCHO MARKET, LLC, et al., Defendants.**

No. 1:15–cv–698

United States District Court, W.D. Michigan, Southern Division.

Signed 03/08/2016

Christopher James Acklin, Robert Anthony Alvarez, Avanti Law Group PLLC, Wyoming, MI, for Plaintiff.

Collin Harold Nyeholt, Fixel & Nyeholt, PLLC, Okemos, MI, for Defendants.

*OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS ALL COUNTERCLAIMS, DENYING DEFENDANTS' MOTION TO DISMISS, AND ORDERING DEFENDANTS' COUNSEL AND LAW FIRM TO SHOW CAUSE*

Paul L. Maloney, United States District Judge

In July 2015, Plaintiff filed a one-count complaint alleging a violation under the Fair Labor Standards Act, seeking damages for alleged unpaid wages. (ECF No. 1.) What seemed like a run-standard FLSA complaint then blossomed into a much more complicated case.

In August 2015, Defendants filed an answer and four separate state-law counterclaims. (ECF Nos. 9–10.) Shortly thereafter, Plaintiff filed an amended complaint, adding an additional federal count under the FLSA, alleging that the Defendants' counterclaims lacked any reasonable basis in law or fact, and constituted unlawful retaliation in violation of 29 U.S.C. § 215(a)(3). (ECF No. 12.) Defendants then filed a motion to dismiss Plaintiff's retaliation claim under Rule 12(b)(6) (ECF No. 13), and Plaintiff filed a motion to dismiss Defendants' counterclaims under Rule 12(b)(1) and in the alternative, Rule 12(b)(6). (ECF No. 14.)

## I. Legal Framework

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R.Civ.P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A defendant bringing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which the ... court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004).

A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). To survive Rule 12(b)(6) motion, the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Bell Atl.,* 550 U.S. at 555, 127 S.Ct. 1955, and the "claim to relief must be plausible on its face" *Id.* at 570, 127 S.Ct. 1955. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted). When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio–Ethical Reform,* 648 F.3d at 369.

The Court must first consider Plaintiff's Motion to Dismiss under Rule 12(b)(1) to decide whether it has jurisdiction before proceeding under Rule 12(b)(6). *See Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990) ("[W]e are bound to consider the 12(b)(1) motion first,

since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction.").

## II. Plaintiff's Motion to Dismiss (ECF No. 14)

As an initial matter, it appears that with respect to *this* motion, Plaintiff and Defendants' both agree that Defendants' counterclaims are permissive, and not compulsory. *See* Fed.R.Civ.P. 13(a)–(b).[1]

In order for claims to be "compulsory" under Rule 13(a), "the claim[ ] [must] (a) arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim[,] and (b) does not require adding another party over whom the court cannot acquire jurisdiction." *Id.* R. 13(a). Here, Defendants allege state-law claims of "fraud based on bad-faith promise," "breach of contract," and "conversion, theft, and/or embezzlement" relating to an alleged loan, and an "abuse of process" claim alleging that the complaint has been initiated or maintained for an ulterior purpose. (ECF No. 9.) Plaintiff first merely alleged a violation of the FLSA for unpaid wages. (ECF No. 1.) The thrust of the counterclaims, an unrelated, alleged unpaid loan, clearly do not "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim."[2] Thus, the counterclaims must be construed as permissive under Rule 13(b). .

As such, Plaintiff argues that the Court must enjoy independent federal jurisdiction over the permissive counterclaims, which does not lie because all parties are residents or domiciles of Michigan, and the amount in controversy does not exceed $75,000. It appears that all parties are indeed residents or domiciles of Michigan, and the amount in controversy is less than $75,000, even factoring in Plaintiff's original complaint.

Defendant asserts that the Court still could exercise supplemental jurisdiction under 28 U.S.C. § 1367. That statute provides:

> [I]n any civil action of which the district courts have jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]

28 U.S.C. § 1367(a). The case law discussing the interplay of jurisdiction, Fed. R.Civ.P. 13(a)–(b), and 28 U.S.C. § 1367 is admittedly muddied.[3]

Prior to the enactment of 28 U.S.C. § 1367, Courts routinely held that "[p]ermissive counterclaims . needed to have an independent federal jurisdictional basis." *E.g., McCaffrey v. Rex Motor Transp., Inc.,* 672 F.2d 246 (1st Cir.1982) ("Permissive counterclaims, Fed.R.Civ.P. 13(b), may not be entertained under a federal court's ancillary jurisdiction unless there is some independent jurisdictional base such as a federal question upon which federal jurisdiction may be founded."); *Warren G.*

---

**1.** While Defendants' later argue in an unrelated response brief that one of the claims is compulsory, but that argument is deemed waived for purposes of this motion.

**2.** The "abuse of process" claim is a closer call for this question, but Defendants have waived any "compulsory" argument in their response by merely urging the Court to exercise supplemental jurisdiction. In any event, that claim is frivolous, as the Court will discuss later.

**3.** Defendants cite to *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) for the proposition that 28 U.S.C. § 1367 "allow[s] for supplemental jurisdiction over claims that did not meet the amount in controversy requirement, so long as one of the plaintiff's claims did." (ECF No. 16 at PageID.126.) This is a correct statement, though this case arises out of federal question (and not diversity) jurisdiction.

*Kleban Engineering Corp. v. Caldwell,* 490 F.2d 800, 802 (5th Cir.1974) ("[P]ermissive counterclaims are not appropriate for ancillary jurisdiction.").

Subsequent to the enactment of 28 U.S.C. § 1367, however, courts have generally held that "§ 1367 supersedes case law on supplemental jurisdiction that had distinguished between compulsory and permissive counterclaims." *E.g., Global NAPs, Inc. v. Verizon New England Inc.,* 603 F.3d 71, 87 (1st Cir.2010); *Jones v. Ford Motor Credit Co.,* 358 F.3d 205 (2d Cir.2004); *Channell v. Citicorp Nat. Servs., Inc.,* 89 F.3d 379 (7th Cir.1996).

■ Indeed, the Supreme Court seemed to so imply in *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 558–559, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (interpreting § 1367(a)'s plain text, which confers a "broad grant of supplemental jurisdiction"). Thus, the First Circuit, in *Global NAPS, Inc.,* noted that "[w]e join two circuits and virtually all commentators in holding that Article III's case-or-controversy standard is the jurisdictional limit for counterclaims." 603 F.3d at 87. The Court views this as the correct jurisdictional limit for counterclaims, consistent with the Supreme Court's latest guidance with respect to § 1367(a). *See Exxon Mobil Corp.,* 545 U.S. at 547, 125 S.Ct. 2611 ("Once a court has original jurisdiction over *the action,* it can then decide whether it has a *constitutional* and *statutory* basis for exercising supplemental jurisdiction over the claims in the action." (emphasis added)). Here, since the Court enjoys original jurisdiction between these parties by virtue of Plaintiff's federal cause-of-action, the Court must examine the text of 28 U.S.C. § 1367 and the case law on the constitutional "case-and-controversy" standard.

### A. Counts I, II, and III (Fraud, Breach of Contract, Conversion)

The relevant supplemental jurisdiction statute provides: .

[I]n any civil action of which the district courts have jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.] 28 U.S.C. § 1367(a).

To begin with, the constitutional "case-or-controversy" standard is not very well developed. *Id.* ("In this case we need only decide that supplemental jurisdiction is somewhat broader than the transaction-or-occurrence test. No Supreme Court case had ever established the same transaction-or-occurrence test as the boundary of Article III case-or-controversy requirement. *Gibbs,* the Court's only decision deciding the scope of an Article III 'case,' instead looked to whether the claims arose from a 'common nucleus of operative fact.' ").

■ When left to the standard elucidated in *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court determines that the first three of Plaintiff's state-law claims here do not "derive from a common nucleus of operative fact," and the "claims are [not] such that [the parties] would ordinarily be expected to try them all in one judicial proceeding." And even if Plaintiff's retaliation count in the amended complaint, which arises as a *response* to Defendants' counterclaims, could *create* the basis for establishing the same constitutional "case," the Court would decline to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(c)(2) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … (2) the claim substantially predominates over the claim or

claims over which the district court has original jurisdiction."). The Court so rules with the background principle that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130.

This case, at its outset, represented a straightforward, one-count complaint for unpaid wages under the FLSA. Defendants then, prior to filing an answer, added counterclaims with respect to an unrelated loan on state-law grounds of "breach of contract," "fraud," and "conversion." (*See* ECF No. 9.)[4] Simply put, the first three claims do not *arise* out of the same "case" or "controversy" for constitutional purposes. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that *are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.*" (emphasis added)).

Defendants, perhaps recognizing that all but one of their claims do not concern the same "case" or "controversy," posit a theory that their claims all "logically relate[ ] to their [fourth] claim that [Plaintiff] abused process to extort money from them." (ECF No. 16 at PageID.129.) But as the Court will discuss momentarily, the abuse of process claim is frivolous (*see infra* Part II.B) and regardless, *each of the claims* here must "relate to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). It does not suffice to throw in unrelated claims of fraud, breach of contract, and conversion, and use an improper "abuse of process" claim as the hook for which all claims allegedly "logically relate." (ECF No. 16 at PageID.129.) And it is certainly not sufficient to allege that "[t]he counterclaims stem from the same common nucleus of operative fact because they flow from [Plaintiff's] repeated attempts to pilfer money from his former employer." (*Id.* at PageID.130.) A generalized theory with respect to alleged "repeated [unrelated] attempts to pilfer money" does not suffice to satisfy the case and controversy requirement.

Thus, the Court **DISMISSES** Defendants' first three counterclaims for lack of jurisdiction, and even in the presence of proper jurisdiction, the Court would decline to exercise supplemental jurisdiction as the facts and law concerning unrelated counts of breach of contract, fraud, and conversion would "substantially predominate[ ] over the [FLSA] claim[s]."[5] *See* 28 U.S.C. § 1367(c)(2). Regardless, the Court's dismissal of those three counter-

---

**4.** Defendants also added an "abuse of process" counterclaim, which the Court will discuss later.

**5.** The Court considered the prospect that Count II of Plaintiff's amended complaint could form the basis for the Court's exercise of supplemental jurisdiction over *all* of Defendants' counterclaims, as that retaliation claim was brought in response to Defendants' filing of the counterclaims, and thus, arguably the counterclaims and the retaliation claim share a "common nucleus of operative fact." How-

ever, regardless, the Court concludes that the factual and legal issues concerning the breach-of-contract, fraud, and conversion claims would "substantially predominate[ ] over the [retaliation] claim," and the exercise of supplemental jurisdiction would not be proper. *See* 28 U.S.C. § 1367(c)(2). Further, as the Court will discuss, Plaintiff's retaliation claim is most proper and relevant with respect to the fourth counterclaim, a frivolous "abuse of process" claim seeking attorney's fees.

claims are **WITHOUT PREJUDICE**, as Defendants urge.

### B. Count IV (Abuse of Process)

■ With respect to the "abuse of process" claim, the Court determines that the claim, in one sense, does not "derive from a common nucleus of operative fact," *i.e.,* the facts related to alleged unpaid overtime, but rather it is a collateral attack on the truthfulness of alleged facts contained in the complaint. However, the Court is not certain that the counterclaim, assuming for a brief moment that it's proper, does not arise out of the same constitutional case or controversy. As long as the federal "claim and the state claim permits the conclusion that the entire action before the court comprises . . . one constitutional 'case,'" the Court possesses the jurisdiction to hear that claim. *See supra* note 5 and accompanying text. Thus, the Court determines it enjoys supplemental jurisdiction over this claim.

However, the Court determines that a state common law "abuse of process" counterclaim is "frivolous," as Plaintiff observes (*see* ECF No. 14–1 at PageID.102), in the context of this counterclaim and this case.[6] And even if such a claim could lie in federal court here, Defendants have failed to establish a possible avenue for relief.

■ First, as the Court has alluded to, an "abuse of process" claim under state common law could not possibly be a cause of action for the mere filing of a complaint in *federal* court. A variety of bodies of law, including the Rules Enabling Act, various preemption doctrines, and the *Erie* Doctrine would bar that sort of claim here.[7] While it's possible that a proper "abuse of process" claim *might* lie in rare diversity cases concerning alleged abusive behavior in state proceedings, *this* case arises under federal question jurisdiction. Plaintiff originally filed a one-count complaint in *federal* court, alleging a violation of *federal* law, in which *federal* rules provide the ground rules for alleged abuses in *federal* proceedings.

■ An "abuse of process" claim, apparently rooted in Michigan common law from the early-twentieth century, cannot be employed to collaterally attack alleged "abuses" contained in the body of a federal complaint. Again, there are a plethora of potential bars to this claim in federal court, including but not limited to the fact that the Federal Rules of Civil Procedure expressly govern sanctions for "commit[ing] an act in the process [of initiating or maintaining a civil action] that is improper in the regular prosecution of the claim." (ECF No. 9 at PageID.28); *see, e.g.,* Fed.R.Civ.P. 11(b)–(c); *see also, e.g., First Marietta Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501 (6th Cir.2002) ("Ohio Revised Statute § 2323.51 is procedural in nature," and thus, Rule 11, rather than Ohio law, governed "sanctions for frivolous conduct.").

**6.** The Federal Circuit similarly held that "the state tort action for abuse of process can[not] be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office," as "[t]he [federal agency] procedures themselves provided a remedy for . . . malfeasance," and "[a]n additional state action would be an inappropriate collateral intrusion on the [federal] procedures . . . 'under the guise of a complaint sounding in tort,' in the words of *Gilbert v. Ben–Asher,* 900 F.2d 1407, 1411 (9th Cir.1990), and is contrary to Congress' preemptive regulation in the area of patent law." *Abbott Lab. v. Brennan,* 952 F.2d 1346, 1355–67 (Fed.Cir.1991).

**7.** The Court recognizes that certain doctrines do not apply to bar Michigan's "abuse of process claim," such as the *Noerr–Pennington* doctrine, "which is focused on the instigation of unreasonable proceedings," rather than "abuse of proceedings[] which occurs after the process has been initiated." *See DirecTV v. Zink,* 286 F.Supp.2d 873, 876 (E.D.Mich. 2003).

The fact that Defendants baldly seek "attorney's fees" as their sole relief under this count underscores the impropriety of such a claim in federal court. *See, e.g., First Marietta Bank of Marietta*, 307 F.3d at 530 ("Under Ohio law, the court can award costs and fees .... Because the Ohio statute does not have a safe harbor provision similar to Rule 11, the Ohio statute conflicts with the procedural requirements of the federal rule.").

■ Here, the only facts that Defendants allege in their counterclaim for any "abuse of process" is alleged "false and untenable allegations" contained in Count I of the *federal* complaint, which merely seeks unpaid wages under the FLSA. Notwithstanding the obvious reasons why a state common law "abuse of process" claim for alleged "false and untenable allegations" contained in a *federal* complaint, concerning a *federal* cause of action, could not possibly lie, Defendants have failed to state a claim upon which could be granted under state law.

■ "In Michigan, to establish a claim for abuse of process, a plaintiff must prove: '(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding.' *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 594 (1981) (citation omitted). For an abuse-of-process claim, the misconduct 'is not the wrongful procurement of legal process *or the wrongful initiation of criminal or civil proceedings*; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.' *Id.* at n. 18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)).

Garcia's abuse-of-process claim against Thorne fails because Thorne's behavior has to do with the initiation of criminal proceedings, not the misuse of process. *Spear v. Pendill*, 164 Mich. 620, 130 N.W. 343, 344 (1911) (stating that the abuse-of-process cause of action 'lies for the improper use of process after it has been issued, not for maliciously causing it to issue')." *Garcia v. Thorne*, 520 Fed.Appx. 304, 311 (6th Cir.2013) (emphasis added); *see, e.g., DirecTV v. Zink*, 286 F.Supp.2d 873, 876 (E.D.Mich.2003) ("Defendant alleges only that plaintiff initiated the case in order to extort money from defendant. As *Friedman* makes clear, an abuse of process action is only appropriate 'for the improper use of process after it has been issued, not for maliciously causing it to issue.' ").

Thus, even if the cause of action concerned alleged abuses in state proceedings, Michigan common law does not recognize such an action for the mere "initiat[ion of a] case in order to extort money." *E.g., DirecTV*, 286 F.Supp.2d at 876.

In sum, the Court is deeply concerned that Defendants' claim could not possibly have been "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed.R.Civ.P. 11(b) [8]; *see, e.g., Powell v. Squire, Sanders & Dempsey*, 182 F.3d 918 (6th Cir.1999) (table) (upholding in part imposition of sanctions because "abuse of process claim" "utterly lacked any basis in law").

■ Any "inquiry reasonable under the circumstances" would surely have led counsel to the conclusion that the Court (and Plaintiff) drew. When an attorney

---

**8.** The Federal Rules provide that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting; or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, infor-

mation, and belief, formed after an inquiry reasonable under the circumstances ... [that] (2) the claims ... and other legal contentions are warranted by existing law." Fed.R.Civ.P. 11(b).

files a complaint, she certifies that "the claims ... and other legal contentions are warranted by existing law ... [and] the factual contentions have evidentiary support, or if specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b); *see, e.g., Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.,* 498 U.S. 533, 554, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) ("Rule 11 imposes an *objective standard of reasonable inquiry.*" (emphasis added)); *Chambers v. NASCO,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("Rule 11 ... imposes an objective standard of reasonableness inquiry which does not mandate a finding of bad faith."); *see also, e.g., First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 515 (6th Cir.2002) ("[T]he imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct.'"); *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir. 1986) ("[S]anctions shall be imposed when it appears that a competent attorney could not form the reasonable belief as to the validity of what is asserted in the paper.").

Thus, the Court **DISMISSES** Defendants' fourth counterclaim **WITH PREJUDICE** pursuant to Fed.R.Civ.P. 12(b)(6). Further, pursuant to Fed.R.Civ.P. 11(c)(3), the Court **ORDERS** Defendants' counsel and law firm[9] to **SHOW CAUSE** why pleading this counterclaim "has not violated Rule 11(b)," as it was "not warranted by existing law."

### III. Defendants' Motion to Dismiss (ECF No. 13)

The Court must next consider whether Count II in Plaintiff's amended complaint,

a "retaliation" claim under the FLSA added *after* Defendants filed counterclaims, states a "claim to relief ... plausible on its face." *Bell Atl.,* 550 U.S. at 570, 127 S.Ct. 1955. The Court concludes that it does, at least with respect to the "abuse of process" claim.

■ "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Adair v. Charter Cty. of Wayne,* 452 F.3d 482, 489 (6th Cir.2006).

There is no question that Plaintiff here "satisf[ies] the first two prongs," as he "engaged in a FLSA-protected activity, filing a cause of action seeking overtime pay, and notified Defendants of the activity by serving them with the complaint." *Id.* In *Burlington Northern and Sante Fe Ry. Co. v. White,* a unanimous Supreme Court held that "[t]he scope of the [Title VII] antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

■ That principle is not limited to the Title VII context, as the Supreme Court observed: "Congress has provided similar kinds of protection from retaliation in comparable statutes without any judicial suggestion that those provisions are limited to the conduct prohibited by the primary substantive provisions." *Id.* at 66, 126 S.Ct. 2405; *see also Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 740, 103 S.Ct.

---

9. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a *law firm* must be held *jointly responsible* for a violation committed by its partner, associate, or employee." Fed. R.Civ.P. 11(c)(1) (emphasis added)

2161, 76 L.Ed.2d 277 (1983) (construing NLRA antiretaliation provision to "prohibi[t] a wide variety of employer conduct that is intended to restrain, or that has the likely effect of restraining, employees in the exercise of protected activities," including the retaliatory filing of a lawsuit against an employee.). And just like Title VII, "[i]nterpreting the [FLSA] antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment of the Act's primary objective depends." *Burlington Northern*, 548 U.S. at 67, 126 S.Ct. 2405. Thus, the fact that Plaintiff is a former employee does not matter. The first question, then, is whether the filing of a lawsuit or counterclaim against a former employee, as here, can constitute "a materially adverse" action that "could well dissuade a reasonable worker from making or supporting" an FLSA claim? *See id.* at 57, 126 S.Ct. 2405. One commentator, analyzing an exhaustive list of cases, has observed:

> The courts, *with virtual unanimity*, subsequent to *Burlington Northern* have answered that first question in the affirmative. The more contentious issue is whether a claim or counterclaim may be retaliatory on a showing of retaliatory animus, even though the claim is not baseless.... *[T]he courts have found that a baseless counterclaim or lawsuit, motivated by a retaliatory animus, will be deemed to be actionable retaliation.* The more difficult question as to whether a counterclaim or lawsuit that is not baseless, but is motivated by a retaliatory animus, can be found to be actionable retaliation is very much still a debatable proposition.

Robert B. Fitzpatrick, *Counterclaims and Retaliation*, ST001 A.L.I.-A.B.A. 1603, 1607 (2011) (emphasis added).

The Sixth Circuit has not addressed this question. The most persuasive, on-point case comes from the Fourth Circuit. In *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir.2008), the plaintiff employee appealed the district court's ruling that he had failed to allege a materially adverse action necessary for his retaliation claim under the FLSA. The Fourth Circuit reversed, holding that plaintiffs need only allege that their employer engaged in an act that would have been materially adverse to a reasonable employee and would dissuade a reasonable employee from making or supporting an FLSA claim. *Id.* at 343. The Court also held that an employer filing a lawsuit against a former employee without a reasonable basis in law or fact constitutes an act of retaliation under this standard. *Id.* at 343–44.

In the Title VII context, the Second Circuit has taken an even more relaxed position. In *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000), the Court held that the filing of a counterclaim could be retaliatory if retaliation "played a motivating role in, or contributed to, the employer's decision," even if the underlying litigation was not frivolous.

Further, other district courts in this circuit, *even before Burlington Northern*, held that a Title VII retaliation claim could lie for claims or counterclaims which were frivolous or brought in "bad faith" with retaliatory motivation. *See, e.g., Rosania v. Taco Bell of Am., Inc.*, 303 F.Supp.2d 878 (N.D.Ohio 2004) (employer's filing of counterclaims for unjust enrichment and conversion could constitute adverse employment action for purposes of retaliation, and the issue of whether the employer was entitled to First Amendment immunity against the retaliation claim was immature); *Gliatta v. Tectum, Inc.*, 211 F.Supp.2d 992 (S.D.Ohio 2002) (employer's filing of a counterclaim could constitute adverse employment action for purposes of Title VII retaliation claim). *E.E.O.C. v.*

*Outback Steakhouse of Florida,* 75 F.Supp.2d 756 (N.D.Ohio 1999) (same).

Ultimately, the Court determines the great weight of the case law supports that Plaintiff's "retaliation" claim under the FLSA, added *after* Defendants filed counterclaims—at least one of which was frivolous—states a "claim to relief . . . plausible on its face." *Bell Atl.,* 550 U.S. at 570, 127 S.Ct. 1955.[10] This conclusion is necessitated because, at a minimum, Defendants' frivolous "abuse of process" claim essentially sought punish the Plaintiff (or deter others) with the prospect of attorney's fees for the *mere filing of a federal claim under the FLSA,* which is unquestionably "a protected activity." *See Adair,* 452 F.3d at 489. Alleging a frivolous counterclaim can constitute "a materially adverse" action, and seeking drastic relief, such as attorney's fees, "could well dissuade a reasonable worker from making or supporting" an FLSA claim.[11]

Thus, the Court **DENIES** Defendants' motion to dismiss the claim. (ECF No. 13.)

### ORDER

For the reasons contained in this opinion, the Court hereby **GRANTS** Plaintiff's motion to dismiss all counterclaims, the first three **WITHOUT PREJUDICE,** and the fourth **WITH PREJUDICE** (ECF No. 14); the Court **DENIES** Defendants' motion to dismiss (ECF No. 13) the second count in the amended complaint. The Court ORDERS Defendants' counsel and law firm to **SHOW CAUSE** why pleading an "abuse of process" counterclaim has not

violated Rule 11(b), and sanctions should not issue consistent with Rule 11(c)(3)–(5). Defendants' counsel and law firm should file a brief with the Court no later than Thursday, March 17, 2016.

**IT IS SO ORDERED.**

---

**10.** The Court need not decide whether the First Amendment or other litigation privilege would bar recovery for an FLSA retaliation claim now. That issue is premature. *See Rosania,* 303 F.Supp.2d at 878.

**11.** The Court will note that prior to a determination of frivolousness, the "abuse of process" claim carried the theoretical possibility

and demand of attorney's fees, which could particularly "dissuade a reasonable worker from making or supporting" an FLSA claim. *See Burlington Northern,* 548 U.S. at 67, 126 S.Ct. 2405. The other counterclaims related to an alleged loan worth $972, the damages of which would almost certainly be less than attorney's fees in any context.